IN THE MATTER OF THE PETITION OF E. ELLERY ANDERSON, TO VACATE AN ASSESSMENT FOR FOURTH AVENUE, ETC.

*Assessment — erroneous estimate of the quantities of work to be done, contained in a proposal for bids — when fatal to the assessment.*

Under the statute governing and controlling the city officials of the city of New York, on the subject of expenditures amounting to more than $1,000, all contracts are to be under such regulations as are established by the ordinances of the common council, and under such ordinances proposals must be issued for bids, which must state the quantity and quality of the supplies, or the nature and extent, as near as possible, of the work required.

In proceedings taken to carry out a public improvement in said city, the proposal for bids, the bids and the contract provided for 10,000 cubic yards of earth excavation and 20,000 cubic yards of rock excavation. The execution of the contract showed that there were over 20,000 yards of earth excavation and less than 10,000 yards of rock excavation actually made.

It further appeared that the appropriation made by the city of New York for the proper survey and the compensation to the surveyor, would not allow of the work being done in such detail as was necessary to ascertain, "as nearly as possible," the quantity of the work required, and that this insufficient appropriation led to the erroneous estimate, as there was nothing to prevent, if proper means were adopted, an estimate of such accuracy as would show the relative quantity of rock and of earth excavation required to be done.

It further appeared that the result of such error, in the estimates of the work to be done, was to require a larger payment to be made for the execution of the work than would have been necessary if one of the other bids made for such work could have been accepted under such estimates, and that such error, therefore, resulted in substantial injury.

*Held,* that an assessment made for such work was properly reduced.

APPEAL from order of the Special Term, reducing an assessment for regulating Fourth avenue in the city of New York.

*Morgan J. O'Brien,* for the appellant.

*Truman H. Baldwin,* for the respondent.

BRADY, J. :

The work to be done, in order to complete the contemplated improvement, was not let or contracted for, it was assessed, however, as required by law, and the learned judge in the court below so declared on the authority of *Brady* v. *The Mayor* (20 N. Y., 312). The estimate for bids, the bids and the contract were for 10,000 cubic

yards of earth excavation and 20,000 cubic yards of rock excavation. The quantities really developed by the performance of the contract were 20,576 yards of earth excavation, and 9,241 of rock excavation, almost an exact reversal of the quantities contracted for. The bid of Thomas F. Kane, who was awarded the contract was the lowest bid on the estimate, but is asserted to have been what is known as an unbalanced bid for the reason that he bid one dollar and sixty-two and one-half cents per yard for earth excavation and two cents per yard for rock excavation. If the quantity estimated had been correctly stated, the result would have been a cost to the city of $16,650, namely, for the earth excavation $16,250, for the rock excavation $400; total, $16,650; but in consequence of the erroneous estimate the expense was $33,620, namely, for the earth excavation $33,436; and for the rock excavation $182.82; total, $33,620.

Under the statutes governing and controlling the city officials on the subject of expenditures, awarding more than $1,000, all contracts are to be made under such regulations as are established by the ordinances of the common council, and under the ordinances, proposals must be issued for estimates and advertised, and they must state the quantity and quality of the supplies, or the nature and extent, as near as possible, of the work required. (Laws 1873, chap. 335, § 91; Rev. Ord., 1880, pp. 116, 117; Rev. Ord., 1866, p. 189.) The estimates were not approximate, indeed, there was a hundred per cent of error in each of the items mentioned. It was not, as the proofs show, as near as possible, for the work required. The witness called for the petitioner satisfactorily explained the method by which sufficient accuracy could be accomplished, and the engineer called on behalf of the city did not contradict him effectually. Indeed, the latter admitted that no appropriation was made for a proper survey, and the surveyor, for the compensation given, could not afford to do in detail what seems to have been necessary to ascertain, as near as possible, the quantity of work required. He admitted that in his estimate he was, to use his own language, " dead wrong," and this error led to the increased expense. His evidence seems to demonstrate that the methods there employed for the purpose mentioned, were decidedly inadequate, and that a very unwise system prevailed which suggested, while it would not secure, economy of

administration ; it illustrated the old adage — penny wise, pound foolish. It is quite clearly shown that the laws were not regarded in the preliminaries to the formation of the contract, made for the improvements involved on this appeal, and that the city was required to pay much more than would have been necessary, if one of other bids made could have been accepted. The result, therefore, is such that it cannot be said, as *In the Matter of Marsh* (83 N. Y., 431), that no substantial injury was done and the petitioner was not aggrieved. In that case it appeared that the bid accepted was, in fact, the lowest made, and it was said that the rejection of the seemingly lowest bid was a benefit. *In the Matter of the New York Protestant Episcopal Public School* (75 N. Y., 324), although a similar bid to that accepted herein, and there characterized as an unbalanced bid, so-called, was sustained, it was for the reason, as stated by the learned chief justice, that it was not *per se* fraudulent, and having passed the ordeal provided by the act of 1872, the court below was, he thought, justified in regarding it free from fraud. The decision, however, did not rest upon that ground, but upon the erroneous mode in which the assessments were distributed. It is not too much to say, nevertheless, that if the contract had not been sanctioned by the ordeal mentioned, it would have been denounced, from what the learned chief justice said of the bid, as one which rested upon a basis which might result, and probably did result, unlawfully, to the disadvantage of the property owner. If any difficulty existed of ascertaining, with reasonable certainty, the quantity of rock excavation in consequence of geological peculiarities of this island, or if it were practically impossible to subject the rock excavation to competition, a method of arranging the proposals might be adopted as suggested by Denio, J., in *Brady* v. *The Mayor* (*supra*). It would seem from the evidence herein that there is no element of this character — nothing to prevent, if proper means be adopted, the statement, with reasonable accuracy, of the quantity of rock excavation required within a given area. The object of the statutes and of the ordinance in compliance with them is to prevent fraud or substantial error ; and though it may not be within the province of the most experienced and able legislators to prevent this by enactment, it may not be impossible to do so by particular scrutiny when the means are furnished and particular attention called to its

possible existence. There was in the bid, which formed the basis of the contract considered herein, a great disparity between the bids for rock excavation and earth excavation, and such as to suggest a possible design to make one price pay them both, which would more likely result if the work easier of accomplishment were more extensive than the more difficult, as was the case here. The mere requirement of proposals and publication do not insure safety from fraud or substantial error; it is a means to an end only. The result is to be attained by enforcing this spirit of the law, directing these formalities in the acts they call for — honest bids for honest purposes and honest contracts, predicate of honest awards, after faithful and thorough efforts to secure both. The obligation rests upon the city and not upon the citizens, and when a principle is announced, as in *Brady* v. *The Mayor* (*supra*), controlling all, that should be applied rigorously. The system of unbalanced bids meets with no favor in the cases, and the opportunity to make them available should be seized and employed. This does not, as suggested, seem to be impossible. None of the cases cited by the appellants are in hostilty to these views, and the decision reviewed was right. The assessment was properly reduced. (Sec. 903, Consolidation Act, Laws 1882, chap. 410.)

No more favorable decision could have been given for the city under the facts shown, and order affirmed, with usual costs.

VAN BRUNT, P. J., and DANIELS, J., concurred.

Order affirmed, with costs.