OPINION OF THE COURT
William A. Walsh, Jr., J.
This is a CPLR article 78 proceeding in which petitioner seeks to annul the determination of respondent board of education awarding a milk supply contract for all schools within the district to Fairlawn Dairies, Inc.; to enjoin the respondent board of education from entering into a contract with Fairlawn Dairies, Inc., or to rescind the contract with *752 that supplier; and to direct that the contract be awarded petitioner as the lowest responsible bidder.
Petitioner was the sole supplier of milk and other beverages to the Hendrick Hudson School District for the 1977-1978 school year under a contract awarded to it by the respondent board of education.
In July, 1978, petitioner was invited to bid on the milk supply contract for the current school year. Petitioner accepted the invitation and submitted its bid. All sealed bids were opened on August 7, 1978, and petitioner’s bid was the lowest. The contract was awarded to Fairlawn Dairies, Inc., the second lowest bidder.
Petitioner’s argument is that it was the lowest responsible bidder and should have been awarded the contract.
It is the school district’s contention that petitioner repeatedly, continuously and deliberately violated its milk supply contract during the 1977-1978 school season by habitually failing to make timely deliveries, by delivering milk in filthy cartons, and that the milk was frequently unpalatable. An invitation to bid was extended to petitioner only because it was standard operating procedure to invite the then contractor to participate in the bidding process.
There were bid instructions, specifications and a proposal form which petitioner accepted and signed, upon its successful bid to furnish milk and other beverages to schools in the Hendrick Hudson School District for the period September 7, 1977 to June 30, 1978. It was provided therein that milk was to be delivered to each of the six schools by 10:00 a.m. each morning. All milk was to be delivered in clean containers and in clean cases, and was to meet Sanitary Code standards.
According to the school district, milk deliveries were consistently late. Inasmuch as all complaints regarding this practice were unavailing, it was decided to have the delivery men mark the time of delivery on delivery slips during January and February, 1978. Those slips show that between January 5, 1978 and February 14, 1978, a period of 36 school days, there were 15 late deliveries: five deliveries were made between 10:40 a.m. and 10:58 a.m.; eight deliveries were made between 11:00 a.m. and 11:55 a.m.; and two deliveries were made after the noon hour.
The allegation is uncontradicted that lunch programs in every district school began before 11:00 a.m., and in some of *753 the schools lunch was served before 10:30 a.m. The high school, for instance, began serving lunch to students at 10:17 A.M.
In view of the foregoing, the conclusion is inescapable that late deliveries of milk constituted a serious breach of material contract provisions and were not technical violations as petitioner suggests. Indeed, it appears that all milk containers to be delivered throughout the area were loaded in one truck and this school district was the last scheduled delivery stop.
It is further claimed that there were numerous deliveries of frozen milk; and, on seven or eight occasions, sour milk was delivered. In bad weather, and sometimes in fair weather, the containers of milk were covered with dirt and debris. It is no excuse to offer the conclusory statement that such charges are typical of the kind that can be leveled against any dairy company.
Contracts relating to the supply of milk and related products to a school district must be awarded to the lowest responsible bidder (Education Law, § 1619). A board of education is empowered to designate any officer or employee to open and read the submitted bids publicly and present them at the next regualr or special meeting of the board (General Municipal Law, § 103, subd 2).
A responsible bidder is one who possesses adequate capital resources, skill, judgment, integrity, moral worth and is accountable and reliable (Matter of Caristo Constr. Corp. v Rubin, 30 Misc 2d 185, mod on other grounds 15 AD2d 561, affd 10 NY2d 538; Matter of Meyer v Board of Educ., 31 Misc 2d 407).
The burden of proof is on the petitioner to show that it was the lowest responsible bidder (Matter of Meyer v Board of Educ., supra; Matter of Haskell-Gilroy v Young, 20 Misc 2d 294, affd 10 AD2d 629). It must be shown that the determination to reject the lowest bid was arbitrary and capricious or based on insufficient evidence (Matter of Haskell-Gilroy, supra).
Inasmuch as the invitation to bid on the contract conferred no property right in petitioner, it was not entitled to a hearing prior to rejection of its bid (Matter of Caristo Constr. Corp. v Rubin, supra; Matter of Haskell-Gilroy v Young, supra). Moreover, such invitation to bid did not constitute a certification or acknowledgement of petitioner’s responsibility.
*754 The papers submitted in opposition by respondent board of education clearly show that there was a rational basis for rejecting petitioner’s bid. Petitioner’s continued violation of material provisions of the agreement during the 1977-1978 year demonstrated less than acceptable reliability and formed a rational basis for the decision to reject its lowest bid to continue as the contractor for the 1978-1979 school year. Petitioner has failed to sustain its burden of proving that such rejection was arbitrary and capricious.
The responsibility to award contracts is vested in the "appropriate officer, board or agency of a political subdivision or of any district therein” (General Municipal Law, § 103, subd 1). In this case, respondent board of education was the appropriate agency to let the contract. Consequently, any designation of the selected low bidder prior to a board award was ineffective. The court recognizes the necessity for such action since the school year was scheduled to begin before a scheduled regular meeting of the board.
The court finds that respondent board of education acted properly within the mandate of subdivisions 1 and 2 of section 103 of the General Municipal Law in rejecting petitioner’s bid and awarding the milk delivery contract to Fairlawn Dairies, Inc., the second lowest bidder, on September 27, 1978, the next regular meeting after the opening of bids. It was appropriate for the board to rely upon the report and recommendation of its business administrator in making that award.
The petition is in all respects denied.